**ANTHONY E. COLOMBO, JR.**
California Bar No. 218411
105 West F Street, Suite 310
San Diego, California 92101
Telephone: (619) 236-1704
Facsimile: (619) 236-1852
Email: anthonycolombolegal@gmail.com

Attorney for Jhon Montano

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE TODD W. ROBINSON)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 22cr00797-TWR |
| Plaintiff, | DATE: May 5, 2023 |
| v. | TIME: 9:30 a.m. |
| JHON MONTANO, | DEFENDANT'S SENTENCING MEMORANDUM |
| Defendant. | |

TO:       RANDY S. GROSSMAN, UNITED STATES ATTORNEY;
             ALLISON B. MURRAY, ASSISTANT UNITED STATES ATTORNEY.

Defendant, Jhon Montano ("Mr. Montano"), by and through his counsel, Anthony E. Colombo, Jr., hereby files the following Sentencing Memorandum.

**I.**

**<u>INTRODUCTION</u>**

Mr. Montano is respectfully requesting a sentence of 24 months custody to be followed by 5 years of supervised release. Mr. Montano maintains that in examining his particular circumstances and the non-violent offense he committed, the recommended sentence of 24 months custody is sufficient, but not greater than necessary to achieve all the goals of sentencing.

Respectfully, the Government's Sentencing Memorandum and its 84 month custodial recommendation only consider the mathematical calculation of the Sentencing Guidelines, and the nature and circumstances of the offense. *See* Government's Sentencing

Memorandum. The Government's recommendation considers none of the information below that the Court should consider when evaluating the totality of the factors to be considered. On balance, when the below factors are consider, Mr. Montano maintains that a 24 month sentence is appropriate, but certainly no more than the 48 month custodial sentence recommended by the United States Probation Department as a sentence sufficient, but greater than necessary sentence. *See* Presentence Investigation Report ("PSR") at 13.

## II.

## SENTENCING FACTORS CONSIDERED

### A.      Current Law

The Sentencing Guidelines are advisory, not mandatory. *United States v. Booker*, 543 U.S. 220, 224-25, 259-60 (2005); *United States v. Hantzis*, 625 F.3d 575, 582 (9th Cir. 2010). Accordingly, this Court is authorized to impose a sentence below the Guidelines range. *Booker*, 543 U.S. at 245. The Supreme Court and Ninth Circuit have established a framework for approaching the sentencing process post-*Booker*. *See Rita v. United States*, 551 U.S. 338 (2007); *Gall v. United States*, 551 U.S. 1113 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Under this framework, the sentencing court must consider all of the factors listed in 18 U.S.C. § 3553(a) when imposing sentence. *Id*.

The overarching statutory charge under 18 U.S.C. § 3553(a) is to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a). Those purposes are the need:

> - to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
> - to afford adequate deterrence;
> - to protect the public from future crimes of the defendant; and
> - to provide the defendant with necessary educational or vocational training, medical care, or other correctional treatment.

All sentencing proceedings are to begin by determining the applicable Guidelines range. *Carty*, 520 F.3d at 991. The Guidelines are the starting point and the initial benchmark, and are to be kept in mind throughout the process. *Id*. Furthermore, the parties

must be given a chance to argue for a sentence they believe is appropriate. *Id*.

The sentencing court must then consider the factors outlined in 18 U.S.C. § 3553(a) to determine if they support the sentence suggested by the parties, specifically:

- the nature and circumstances of the offense, § 3553(a)(1);
- the history and characteristics of the defendant, § 3553(a)(1);
- the kinds of sentences available, § 3553(a)(3);
- the sentencing guidelines range, § 3553(a)(4);
- pertinent Sentencing Commission policy statements, § 3553(a)(5);
- the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

When considering these factors and determining the appropriate sentence, the sentencing court may not presume that the Guidelines range is reasonable, nor should the Guidelines factor be given more or less weight than any other. *Nelson v. United States*, 129 S.Ct. 890, 892 (2009); *Carty*, 520 F.3d at 991.

This court is "empowered to disagree with the Guidelines, when the circumstances in an individual case warrant." *United States v. Mitchell*, 624 F.3d 1023, 1028 (9th Cir. 2010). Although "[n]o judge is *required* to sentence at a variance with a Guideline" . . . "every judge is at liberty to do so." *Id*. at 1030 (citing *United States v. Corner*, 598 F.3d 411, 416 (7th Cir. 2010)). Under these principles, the court is at liberty to tailor a sentence to the individual defendant. *United States v. Chavez*, 611 F.3d 1006 (9th Cir. 2010) (citing *Kimbrough*, 552 U.S. at 101). Given the application and balancing of the factors in 18 U.S.C. § 3553(a), the sentencing process necessarily involves an exercise in judgment, not a mathematical proof. *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008). Indeed, rigid mathematical formulas for reviewing outside-guidelines sentences are barred. *Gall*, 552 U.S. at 47.

Furthermore, one of the goals of sentencing remains rehabilitation. *United States v. Moreland*, 568 F. Supp. 2d 674, 687 (S.D. W. Va. 2008). This goal cannot be served if a defendant has nothing to look forward to beyond imprisonment. *Id*. Accordingly, a judge should hesitate to impose a sentence so severe that he "destroys all hope and takes away the possibility of useful life." *Id*. (citing *United States v. Carvajal*, 2005 WL 476125 at *6, 2005

(S.D. N.Y. 2005)). Instead, the district court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a).

## B.     Applicable Sentencing Guidelines

Mr. Montano maintains the following Sentencing Guidelines are applicable and appropriately applied in this case:

| | |
|---|---|
| Base Offense Level [U.S.S.G. §§ 2D1.1(c)(4)] | 32 |
| Safety Valve [U.S.S.G. §§ 2D1.1(b)(18), 5C1.2] | -2 |
| Acceptance of Responsibility [U.S.S.G. § 3E1.1(b)] | <u>-3</u> |
| Total Adjusted Offense Level | 27 |

Mr. Montano has zero criminal history points. He is in a Criminal History Category I. The Sentencing Guideline range for an adjusted offense level of 27, and a Criminal History Category I, is 70-87 months custody. Consistent with the United States Probation Department, Mr. Montano believes a variance from the Sentencing Guidelines is appropriate and is requesting a 24 month custodial sentence with 5 years of supervision to follow. *See* PSR at 14 (Probation has recommended a 48 month sentence).

## C.     Applicable Factors Pursuant to 18 U.S.C. § 3553(a)

It must be noted at the outset, Probation believes that a variance from the otherwise applicable Sentencing Guidelines is appropriate in the instant case. *See* PSR at 14. Probation in the PSR stated:

> In considering an appropriate sentencing recommendation in this case, the undersigned considered the factors listed in 18 U.S.C. § 3553(a) with particular attention to the defendant's personal history and characteristics, as well as the need to address deterrence, punishment and protection of the public from further crimes of the defendant . . . it would appear that a sentence below the advisory guideline range is sufficient, but not greater than necessary, to deter the defendant from committing a similar crime in the future, and a fair and just sentence can be met below that number.

*See* PSR at 13-14. Probation recommended a 48 month sentence be imposed. *See* PSR at 14.

### 1.    Nature and Circumstances of the Offense

The plea agreement, the PSR, and the above information concerning the offense all provide sufficient information for the Court to consider when evaluating the nature and circumstances of the offense. However, Mr. Montano would like to highlight several factors for the Court to consider.

### a.    The Offense was Non-violent

"If the defendant is a non-violent first offender [], the Court should consider imposing a sentence other than a sentence of imprisonment." *See* United States Sentencing Guidelines § 5C1.1, Commentary: Application Notes: 4. (2021). "A 'non-violent first offender' is a defendant who has no prior convictions or other comparable judicial dispositions of any kind and who did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense of conviction." *Id*. Although the offense is serious, Mr. Montano is a "non-violent" offender. The offense did not involve violence, weapons, threats, injuries, loss of property, or any identifiable victims. Thus, as a non-violent offender, the requested sentence is sufficient, but not greater than necessary.

### b.    Genuine Remorse for Engaging in the Offense

Mr. Montano is very remorseful and regrets his involvement in the offense. *See* PSR at 6. He knows what he did was wrong. He has expressed remorse to Probation. *See id*. Mr. Montano stated, "freedom is priceless." *Id*. According to Probation, his remorse is sincere. *See* PSR generally at 8, 13-14.

### c. Mr. Montano's Role in the Offense

It is important to consider that Mr. Montano was not the Captain of the vessel, nor the navigator. He cannot read or write and does not have any of the special skills associated with maritime smuggling as detailed by the Government in its sentencing memorandum. Mr. Montano was just a hired deck hand with a strong back and a desperation for money.

### 2.   History and Characteristics of the Defendant

The PSR accurately reflects Mr. Montano's history and characteristics.  Under 18 U.S.C. § 3553(a), this Court should consider Mr. Montano's personal history when determining the appropriate sentence for his offense.  *Booker* gives district courts the discretion to weigh a multitude of mitigating factors such as age, education, and family ties and responsibilities. *United States v. Burgum*, 633 F.3d 810  (9th Cir. 2011).

As noted by Probation, Mr. Montano has no criminal convictions, served in the Colombian military, has no history of substance abuse, and is a simple fisherman without the ability to read or write.  *See* PSR generally.  Mr. Montano's mother abandoned him at the age of 2, and he was raised by his grandmother.  Mr. Montano's father was a fisherman and would often be gone for days.  Mr. Montano's childhood was "really rough" as his family lived without running water or electricity, and could only afford one meal per day. Mr. Montano cannot read or write as he dropped out of school at the age of 8 to begin work to support his family.

Mr. Montano believes, consistent with Probation, the above background supports a variance. *See* PSR at 13-14.

### 3.   Need to Provide Just Punishment and Respect for the Law

#### a.   Incarceration has a Greater Significance for First-time Offenders

Mr. Montano has never spent time incarcerated prior to the instant offense.  Probation noted in the PSR this is Mr. Montano's first criminal conviction.  *See* PSR at 8.  Probation agreed this is Mr. Montano's first criminal conviction and any custodial term will likely have a great impact on him.  *See* PSR at 13-14.  Given Mr. Montano's inexperience with the criminal justice system he is likely to be more susceptible to abuse while in custody than other repeat offenders who are familiar with the circumstances of imprisonment.  *See United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (generally a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet

continues to reoffend); *see also United States v. Baker*, 445 F.3d 987, 990 (7th Cir. 2006) (first experience with prison would mean more to defendant and have greater impact than to a defendant who had prior convictions). Accordingly, for a first time offender who engaged in a non-violent offense, severe imprisonment should be avoided and is otherwise not necessary to achieve respect for the law, or to ensure the desired deterrent effect required.

### b. The Significant Collateral Consequence of Conviction

The collateral consequences of a felony conviction cannot be understated. Mr. Montano is not a United States citizen. He is a Colombian citizen and has never been in the United States. As a result of Mr. Montano's conviction he will be deported back to Colombia upon the completion of any sentence imposed by the Court. Regardless of the sentence imposed he will be deported. Thus, Mr. Montano will be exiled from the United States at the conclusion of this case. The loss of his right to work in, or even visit, the United States is a life-long collateral consequence of his conviction. The deportation he faces is a "life sentence of banishment [from the United States] in addition to the punishment which a citizen would suffer from identical acts." *Jordan v. De George*, 341 U.S. 223, 232 (1951) (Jackson, J.). If Mr. Montano were a citizen, any sentence that this Court imposes would have a definite beginning and end. However, long after his sentence is completed Mr. Montano will suffer the consequences of his mistake. The collateral consequence of life-time banishment from the United States is a "drastic" penalty that will irreversibly impact Mr. Montano's life. *Id.* This is only compounded by the danger he faces upon deportation from the individuals who hired him. Mr. Montano respectfully requests that this Court take into account the above collateral consequence of his conviction when considering an appropriate sentence.

Furthermore, it is important to note that unlike a United States citizen that can earn and be eligible for early release from the Bureau of Prisons, Mr. Montano as a non-citizen cannot earn or be eligible for any early release programs.

22cr00797-TWR

### 4.  The Proposed Sentence will Promote Deterrence

#### a.  Specific Deterrence has Been Achieved

Here, there can be no question the requested sentence is sufficient to specifically deter Mr. Montano from engaging in any future criminal conduct.  Mr. Montano has realized the consequences of his actions, and has vowed to never choose the same path again.  *See* PSR at 6.  The time already incarcerated, the threat of further incarceration, and of course a pending deportation, have all been significant deterrents experienced by Mr. Montano.  Thus, further severe incarceration is not necessary to promote specific deterrence.

#### b.  A Severe Sentence to Promote General Deterrence Must be Weighed Against Individualizing the Sentence

Few legal principles are either as ancient or deeply etched in the public mind as the notion that punishment should fit the crime.  *See United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985).  The familiar maxim, however, is only half-true.  "[I]n the present century the pendulum has been swinging away from ... the philosophy that the punishment should fit the crime and toward on that the punishment should [also] fit the criminal."  W. LaFave & A. Scott, Handbook on Criminal Law § 5 at 25 (1972).  The concept of the notion of individualized sentencing is firmly entrenched in our present jurisprudence.  As the Supreme Court observed, "[p]unishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949).  While general deterrence is a legitimate consideration in passing sentence and must be considered by the Court under 3553(a), it is subject to limitation.  "Tailoring punishment to the individual criminal may reduce the efficacy of [general] deterrence, but that reduction is an inevitable cost of a system that eschews mechanistic punishment." *Barker*, 771 F.2d at 1368.  "[G]eneral deterrence for the benefit of society is served when a person is convicted of a serious crime, thus deterring others from making the same mistake." *United States v. Onuoha*, 820 F.3d 1049, 1057 (9th Cir. 2016).

In the instant case when weighing the need to impose a severe custodial sentence to promote general deterrence against the need to individualize the sentence to Mr. Montano,

respectfully, Mr. Montano maintains general deterrence is satisfied with the requested sentence, and the recommended sentence is the appropriate individualized sentence. A judge should hesitate to impose a sentence so severe that he "destroys all hope and takes away the possibility of useful life." *United States v. Carvajal*, 2005 WL 476125 at *6, 2005 (S.D. N.Y. 2005)). Here, Mr. Montano understands he must be punished, but also believes the requested sentence is sufficient, but not greater than necessary to do so in his case.

### 5. The Public will be Protected from Future Crimes by Mr. Montano

Mr. Montano will be deported upon the conclusion of his custodial sentence. Mr. Montano maintains that more appropriate than imposing a severe custodial sentence, consistent with 28 U.S.C. § 994(k), the Court, to the extent possible, should afford Mr. Montano the opportunity to rehabilitate himself, and maintain gainful employment and attend vocational training. *See* 28 U.S.C. § 994(k) (2009) ("The [Sentencing] Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant with needed educational or vocational training, medical care, or other correctional treatment"). Mr. Montano cannot read or write, but with this skill undoubtably he will have over other options available to him to avoid criminal conduct in the future.

Furthermore, as a first-time offender, Mr. Montano presents a low risk of recidivism. *See United States v. Duane*, 533 F.3d 441, 453 (6th Cir. 2008). Recidivism rates of first-offenders are significantly lower than those for other defendants in higher criminal history categories. *See* Michael Edmund O'Neill, *Abraham's Legacy: An Empirical Assessment of (Nearly) First-Time Offenders in the Federal System*, 42 B.C.L. Rev. 291 (2001) (suggesting a different Criminal History Category be created for "true first-time offenders"). In a case such as Mr. Montano's where he has no experience with incarceration prior to the instant offense, severe incarceration is not appropriate. Mr. Montano's background simply presents a reduced likelihood of recidivism. *See A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score*, 15 (Jan.

4, 2005). Education and employment are more effective ways to protect the public and prevent recidivism. Therefore, Mr. Montano urges the Court to impose a 24 month custodial sentence, but certainly no more than the 48 month sentence recommended by the Probation Department in the PSR. *See* PSR at 14.

## III.

## SENTENCING RECOMMENDATION

Based on the foregoing facts and law Mr. Montano respectfully requests this Court impose a 24 month custodial sentence to be followed by 5 years of supervision.

Respectfully Submitted,

*/s Anthony E. Colombo, Jr.*

DATED: April 28, 2023  **ANTHONY E. COLOMBO, JR.**
Attorney for Mr. Montano